UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION
criminal No.:22-CR-207( JRT/ECW)

UNITED STATES OF AMERICA

VS

JUSTIN WHITE

RECEIVED BY MAIL
FEB 24 2023
CLERK, U.S. DISTRICT COURT
ST. PAUL, MN

## MOTIONS AND MEMORANDUM FOR SUPPRESSION AND DISMISSAL DUE TO ENTRAPMENT AND OUTRAGEOUS GOVERNMENT MISCONDUCT

Defendant, Justin white by and through himself ,respectfully submits this memorandum in support of his motion regarding entrapment and outrageous government misconduct.

## FACTS

Defendant is accused of possession with intent to distribute fentanyl and possession of a firearm. It is alleged that defendant used an assumed name to complete an application to purchase a TDP 5 pill press from LFA machines DFW,LLC. Pill press sales are regulated,by the united states department of justice,drug enforcement administration.(DEA).AN order to purchase a pill press,

SCANNED FEB 24 2023 U.S. DISTRICT COURT ST. PAUL

1

customers have to fill out a due diligence form, and provide identification as required by 21 CFR 1310.06 and 1310.07. Although this particular company has to have approval from the local DEA branch, in the community in which its head quarters is located, before any sales are finalized. Being that LFA offers a service along with there product. That service is technical as well as chemical support to its customer. LFA takes pride in being able to tech a customer with no prior experience the chemical in technical support needed to be able to manufacture pills fast. The DEA knows of the counterfeit pill epidemic, so to combat the spreed of illegal pills ending up on the streets. They demand that LFA only allow services to customers who they approve. The DEA was aware that the defendant was trying to purchase the TDP with a fictitious Id.. The DEA was also aware of where the TDP was being shipped to. When the machine was shipped the DEA was conducting surveillance to conclude who the machine was being shipped to. Instead of stopping delivery the DEA decided to investigate.

They followed the defendant to a apartment , were the TDP stayed Intel it was recovered. The DEA was aware that LFA offers a knowledge to its customers,whether it be chemical are technical .They offer phone call support to answer question about how to properly use the TDP as well as how to properly mix the components needed for the production of pharmaceutical pills. It should be noted that defendant wasn't aware of how to use the TDP,as well as unaware of how to mix key components needed for manufacturing. All of this knowledge was provided by LFA through there employees Mike and Kim. Defendant made various phone calls to company via phone in email, had zoom meetings all in furtherance of being properly trained to produce pharmaceutical pills. The DEA was the one's in charge of the investigation thus allowing all of this to happen. The DEA then waited more then 30 days after delivery of the machine before intervening. When search warrants were executed,the government seized the pill press,suspected narcotics,storied magnesium, crystal floss-flat, blue

3

bonding agent, and a handgun. Defendant was charged by indictment. It is the defendant's position

that the conduct of the government through the agents of the DEA and associated law enforcement

agencies, constitutes entrapment and outrageous government misconduct. The defense moves for the

remedy of suppression of all evidence of criminal activity discovered and dismissal of the indictment

to the governments unlawful activity

## INTRODUCTION TO ARGUMENT

The supreme court has observed that due process serves as a bar to a conviction where the

government's involvement in a criminal enterprise has become sufficiently outrageous and shocking to

the universal sense of Justice see. united states v Russell, 93 S.ct. 1637 (1973) UNITED STATES V

TWIGG 588 F.2d 373(1978) UNITED STATES V GREENE 454 F.2d 783 (9th cir.1971)   Entrapment

requires inducement, resulting and the generation of new crimes, that individuals lack a previously

predisposition to commit. If a individual has a predisposition to commit a alleged offense he forfeits the entrapment defense altogether. Although in Russell the courts concluded that he may have harbored a predisposition to commit the crime he may still avail himself to the entrapment defense.

Principally ,he relies upon the concurring opinions of Justices Frankfurter and Roberts in Sherman V. united states,356 U.S 369,378-385,78 S.Ct.819,2 L.ED2d 848(1958) Sorrells V. UNITED STATES,287 U.S 435,453-459,53S.CT.210,77L.ED.413(1932) For regardless of the significance of "predisposition"as an element in "entrapment," the courts conclude theirs merit in Russell's contention,that a entrapment defense may be made available upon an intolerable degree of governmental participation in the criminal enterprise, regardless of the predisposition of the defendant. United States v Bueno,447 F.2d 903(5th CIR.1971),and by district judge Ferguson in his very carefully written opinion in UNITED STATES v Chisum,312 F.Supp.1307(C.D.Cal 1970) Frank

with the concurrence of Douglas Harlan an Brennan j.j concurred. These justices expressed the view of entrapment was a matter for the courts in not the jury see United states v Ford 276 n.w 2.D 178 8th cir (1979) on entrapment being for the courts to concluded as well.

## ENTRAPMENT ARUGEMENT

The federal rule of entrapment is based upon two theory's subjective and objective. Law enforcement may only set decoys to entrap criminals who possess the previously inclination to commit such crimes. Predisposition acts as a safe guard from law enforcement to offer its citizens opportunity's to break the law. Human temptation is weak enough, in it is a clear abuse of power for law enforcement to offers its citizens opportunity's to break the law without a justifiable means. Allowing law enforcement to temp its citizens without predisposition; would suggest that law enforcement job would include the generation of new crimes for the sake of prosecution. Law enforcement sworn obligation is the apprehension of criminals in the prevention of crime. The defendant acknowledges that he may

have harbor a intent to commit the alleged offense,but that is a far cry from having a predisposition.

Allow me to elaborate on the essential elements of predisposition. The first in least important"at least in the defendants circumstances,being that its a degree of knowledge needed for the completion of the alleged crime". Is intent,being that intent alone does not make crime. Intent plus the knowledge of how to do the act makes crime.( intent alone does not make crime intent plus act combine most be imputable to the defendant )see I.D @ Demayo 32.d 472@[*474*7] The second in most important at -least in the defendants case,is the cognitive approach, or "the know how" of how to commit the act .( crime ) Because without the knowledge of how to commit a particular crime, no crime would occur .Specifically with crimes that require a degree of knowledge to complete, such as manufacturing a controlled substance, and these type of cases intent alone is irrelevant without the knowledge. So yes the defendant harbored a intent,but that intent wasn't more important then the knowledge that was implemented inside of his mind of how to complete the criminal elements need for the completion of said crime. That intent was at most still in a innocence state; so in retrospect the defendant is still

7

consider a innocent person. That lacked predisposition UNITED STATED V BUTTS 273 F .35

Although in some criminal cases all that is needed to establish a predisposition, is a intent an a

eagerness to commit the crime ,usually those type of criminal cases only involve a action. See

Sorrells V. UNITED STATES,287 U.S 435,453-459,53 S.CT.210,77L.ED.413(1932)  on a crime only

needing a action and not requiring a degree of knowledge to complete all of the elements of a

particular crime. Usually in theses type cases " Sorrels" all that is needed to acquire predisposition is a

willingness to commit them. And the defendants case its a certain degree of knowledge one has to

posses in order to complete commission of said crime. I say that to say that its a different degree in

intent and not all intent should be viewed the same. Know that we have a clear understanding of the

irrelevance concerning intent and this particular instance; we should now focus or intention on how the

government implemented the know with-how needed for the completion of said crime,inside the mind

of a innocent person. Its nothing an the defendants back ground criminal nor personal to suggest he was savoy on how to operate TDP ,nor is there anything indicative that he possessed the chemical knowledge needed for the completion of said crime. Lets put the courts on notice that upon authorization of the sale of the TDP. Chemical an technical support will be made available to its customers .This company offers a product as well as a service ,that acts as a institution for its customers to develop the cognitive skills needed for technical as-well; as the chemical support needed,for the proper manufacturing of pharmaceutical pills. This scholarship is surrounded upon teaching new customers ;who had no prior knowledge of how to produce pharmaceutical pills this education fast,they even offer a two day course free of charge. So lets not confuse the courts by allowing them to think all one needs is a TDP for the manufacturing of said crime, in the present case the defendant needed much more, and without the help in knowledge provided by LFA ,it would have

been an impossible task .We should also put the courts on notice that the defendant spoke with Mike in Kim ( Representative of company )  on many occasion. The duo was responsible for the training the defendant received from company. So now it should be easy to conclude that the know how( knowledge need for completion of crime ) originate from the company; but if the DEA is the ones responsible for who receives the knowledge then an essence there responsible. Because without there approval none of this would have came into manifestation. It was the DEA who also decided to employ such investigatory tactic's ,it would be unfathomable for them to claim ignorance of the harvest yield from the seeds they sowed through there investigatory plot. Nor can the claim disassociation from company's tutelage-ship.see Sherman v united states 356 U.S 369 78 CT 819@[*852**9**] were government was held responsible for the actions of entities there in concert with.   Lard vs UNITED STATES 734 F.2d 1290 (8th 1984 )  In Lard the government on behalf of a informant was introduce to Lard under the pretense that lard was going to sell him a firearm. When the agent arrived all Lard had was some shotgun shells ,and a small detonator . Upon many request Lard finally agreed to make the bomb. Lard made the bomb ; and was arrested in convicted for selling a explosive device. The case was overturned for two reason .One being lard expressed a reluctance to commit the crime. Two the criminal intent didn't originate with lard.  ( he ensnared lard with a law

breaking disposition that was there for not present ) see id Lard [*1296*] Lard case in the defendants case is similar in comparison for the same reason in, different reason at the same time. Lard lacked the intent to commit the crime but possessed the know with how .The defendant in the present possessed the intent but lacked the know with how. Now I will show you why intent in the know with how, of how to commit a crime works collectively;and why the implementation of any of the two amounts to entrapment. Lets start with intent since its the least important, at lease in the present defendants case. In lards case he never intends to make a bomb. His reluctance , culpable with that fact is the reason why the case was overturned. His reluctance only matter because he actually produce the bomb. Had he possessed a eagerness to produce the bomb upon the agents suggestion, am sure the conviction would have been upheld. The agents implantation would have been justified by the hypothesis , of Lard having a detonator he must be into the manufacturing of destructive devices. One could only conclude that the agents suggestion was only made in efforts to keep Lard honesty, about why one would need a detonator. Which in my eyes was the by product of good policing. only In theses type of circumstances , is when the intent of a criminal endeavor is justified from originating from a government official. But and no way shape or forum should the training of how to commit a particular crime ever originate from a government official .This type of behavior could never be justified.. Just

11

take Lards case in switch it around, do you think if Lard had the intent but lack the knowledge of how to make the bomb would it have been plausible for the government to teach him? Do you think if a meth dealer wanted to get involved in the manufacturing of meth would it be right for the government to teach him?So if its not OK for the government to suggest that you commit a crime. Under what circumstances would it be OK from them to tech you how to commit a crime? The fact that the defendant wanted to learn is not a reasonable justification. So Now it should be clear to see why the intent in the present case has no relevancy. And why the government shouldn't ever be allowed to inform someone how to commit a crime, who had no prior knowledge of how to do such. This type of behavior is unethical,inhuman in has no place inside a advance society. So as stated before anytime intent or the know with how ,of how to commit a crime is implemented inside the mind of a innocent person then entrapment exist. The common denominator between both case is the ,( implementation of a law breaking disposition that there for wasn't present. In such cases the government takes on the wholesome appearance of the consummate manufacture of crime,by those responsible for up holding and enforcing it.) see I.D @ Lard [1296**20*]By passing specific criminal statues the supreme court has reasoned,congress did not intend for the government to use its resources time in effort to increase the criminal population by ensnaring and education ones who posses a intent into a deeper in new

route of criminality. The investigatory decision to approve the delivery of the TDP resulted an inducement; as well as the delivery of contraband. And the present case the TDP in the controlled substance worked as a tantrum one couldn't coexist without the other. They both were equally as important to the manufacturing of said crime. " the facts of Bueno and Chisum are remarkably the same in the present case. in Bueno the defendant was supplied heroin by a government informer. Chisium was convicted of receiving counterfeit money supplied by a government official And both cases the courts concluded that since the government supplied the contraband then entrapment exist. While its true that Russell and his co defendants were supplied with only one ingredient for the manufacturing of the illicit drug. That ingredient was as essential to the perpetration of Russell alleged crime as was the heroin in the counterfeit in Bueno and chisum .Russell would have been powerless to commit the crime charged without the pervasive intervention of the government "

OPINION BY ELY

Russell 459 F.2d 671 I.D @ [*5*] in the present case the TDP was just as important as the counterfeit in herion in Bueno in Chisum.so it should be safe to conclude that the government knowingly gave the defendant contraband.  Anytime that  occurs then entrapment exist. Its law enforcement sworn obligation to factor an all possible outcomes of a investigation. Law enforcement was fully aware on the tutelage-ship made available to lFA customers upon receiving the TDP. Law enforcement was

13

aware that this particular company would be attractive to individuals because of the training made available to its customers    I say that to say the DEA, should of took precautionary measure to ensure they wasn't affording a individual a opportunity to learn a new form of criminality. Strategy and deception is needed to apprehend those involved in the illicit side of the manufacturing of a controlled substances. Usually these type of crimes go undetected. Law enforcement sometimes supplies criminal organization with the essential tools need for the manufacturing of a controlled substances,for infiltration purposes only. Usually these type of criminal enterprise or already in conception. Law enforcement investigatory tactic displayed a trendiness amount of over zealousness. The product of good policing would have been to figure out. First who they were delivering the TDP too. Second would have been to try in figure out was this type of criminal enterprise already in existence . Just off the fact the company offers a tutelage-ship of how to teach ones with no prior experience the know how of how to produce pharmaceutical pills. At minim those two precautionary steps should have been deployed before any investigatory tactic ,was deployed. Just to protect the integrity of the DEA .From the potential harm it could have caused to afford, a individual a opportunity to learn a new criminal disposition under there operational umbrella. Rather it be directly or indirectly theirs no justifiable

excuse from the results of there investigatory tactic. This type of investigatory tactic turned the DEA into a manufacturer instead of a detector of crime. This type of behavior is only meant to increase the population of the criminal class. As well as expose individuals to a level of criminality that there for wasn't previously present . See Sherman v united states 356 u.s 369 785 S.ct 819 judges opinion on the difference between offering one with a opportunity to commit a crime in inducing one to commit a crime. My next accretion is that if the defendant is guilty of anything its being a detective made criminal. Healy 202 F349@[*350*]   Decoys or permissible to entrap criminals but not to create them. To present opportunity to those willing to or having the intent to commit crime,not to educate an ensnare ones into a further form of criminality. Authorization of the TDP into the hands of the defendant who hadn't had a manufacturing criminal enterprise a foot made the DEA a collaborator in fringe accomplish of said crime. The tutelage-ship made available into the concision of a person who previously didn't posses the knowledge made the DEA the chief executive advisor .( though the seller has violated the statue he was the passive instrument of the government. An his is a wrong he cant justly be convicted)For he is a government made criminal . See Healy 202 F349 I.D [*350*]  [*2*]. Demayo v UNITED STATES 32.F.2d 472 The court reversed defendants conviction based on the accretion,there was no overt acts of the defendant when a government agent  without the aid of

Demayo transported liquor into Indian territory which was unlawful. The courts conclude that the agents must not complete the essential part of a crime without the aid of the defendant. The present case and Demayo case or the same in nature although different in degree . Being that the important and most imputable part of the crime derived from the investigatory tacit the government employed." which was the knowledge of how to manufacture pharmaceutical pills" and without that knowledge being implemented inside of the consciousness of the defendant no crime would have occurred. The foundation of manufacturing a controlled substance is the directions of how to do such. And the present case, that knowledge cant be imputed towards the defendant, because he was only a recipient, and there for never possessed the knowledge of how to do such. The government preformed the most essential overt acts of said crime. Which was the directions of how to manufacture pharmaceutical pills, without the aid of the defendant. Demayo V UNITED STATES 32 F472 @[*474] [*5] opinion by van valkenburgh, ( we are of the opinion that the government may not so far participate as themselves to preform unaided by any of the conspirator's the crucial act of introducing the liquor into forbidden territory. They may properly afford opportunity to those suspected of crime to commit the original offense. They may participants to a certain extent,but they themselves may not unaided as in the present case do they very overt act which is essential to the consummation of the offense charged

in conspiracy case. No matter what evil has been planed . There is a potentiate lying between thought

in deed )

## CONCLUSION

The DEA knew of the potential risk its investigatory tacit held ,with the possibility of ensnaring

a individual into a deeper root of criminality. By allowing the authorization of the TDP which availed the defendant with the proper tutelage needed to complete the criminal elements of said crime. Let the

record reflect the defendant didn't have the proper utensils nor knowledge to complete said crime all of

this was bought in paid for under the governments investigatory plan. They knew of the company's

protocol of educating customers who had no prior experience and the manufacturing of pharmaceutical

pills. why didn't they take precautionary measure to ensure they wasn't allowing a education to a

individual who didn't previously posses the knowledge?Or why didn't they make sure they wasn't

giving a individual tools that one couldn't procure on his on;Thus making sure that this type of crime

was already into existence. All of the DEA's actions concerning this investigatory tacit essential made

them manufactures of crime in not detectors of crime. Am sure that the investigatory plan wasn't they

only available option the DEA had to investigate this potential crime, This is at lease the work of a

overzealous agency.   The brandies view was that the courts have the authority and responsibility to

protect the integrity of the judicial process from the corrupting influence of disreputable police conduct that creates rather then detects and capture criminals. Disreputable police conduct is disreputable no matter the characteristic of the defendant.

Because of the investigatory tactic deployed dismissal should be granted. And all evidence derived from the unlawful investigation should be suppressed under the fruits of a poisonous tree doctrine, see United States v Wongsun 371 U.S 471 83 s.ct 407 (1963)

RESPECTFULLY SUBMITT BY

JUSTIN WHITE 02/17/23