UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-207 (JRT/ECW)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) **CONSOLIDATED RESPONSE OF THE UNITED STATES TO DEFENDANT'S PRETRIAL MOTIONS** |
| v. | ) ) |
| JUSTIN WHITE | ) ) |
| Defendant, | ) |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Nathan H. Nelson, Assistant United States Attorney, hereby submits its response to the defendant's pretrial motion for suppression and dismissal based on alleged "entrapment" and "outrageous government conduct" in the above-captioned case, contained at docket entries 52-53, 55.

## BACKGROUND

In December 2021, local investigators with the DEA received a tip that a person named "James Watkins"—with an address on Arkwright Street in Saint Paul—had placed an order for a LFA Machines pill press model TDP 5.[1]  (Def.'s Ex. 2 pp. 3-4).  Agents subpoenaed LFA machines for more information about the purchase. (*Id.*).  They received a tracking number for the shipment as well as a phone number for the purchaser

---

[1] This is a device that helps press loose powders or other ingredients into a "tablet" form—typically for use as nutritional supplements, herbal remedies, pharmaceuticals, or medicines.  The TD5 is capable of manufacturing almost 5,000 tablets per hour. https://www.lfatabletpresses.com/desktop-tablet-press-tdp-5.  As turned out to be relevant here, devices such as this are also sometimes used in the illicit drug trade to manufacture counterfeit pharmaceutical tablets containing fentanyl or other drugs.

"James Watkins" and a copy of his ID (which did not list Arkwright Street as his address, but rather another address on Sherburne Avenue in Saint Paul). (*Id.* p. 4). Further investigation revealed that the purchaser's ID was fake—with no records found for the purported name or driver's license number. (*Id.*).

On December 29, 2021, therefore, officers conducted surveillance on the delivery of the pill press to Arkwright Street. (Def.'s Ex. 2 p. 5). They saw it picked up by the defendant Justin White, whose appearance matched the photo on the fake ID in the name of "James Watkins." (*Id.* pp. 4-5). The defendant did not take the pill press inside the Arkwright Street address, but rather immediately transported it to his apartment in downtown Minneapolis. (*Id.* p. 5). Based on the foregoing, officers believed that the defendant had used "a fraudulent driver's license, a fraudulent bank account and a random address for delivery and drop off . . . to avoid detection by law enforcement." (*Id.* p. 6).

Officers continued investigating in January 2022, conducting two separate K9 sniffs on the door to the defendant's apartment. (Def.'s Ex. 2 p. 6). Both times the K9 alerted to the odor of narcotics at the door. (*Id.*). Similarly, officers conducted surveillance on the defendant's apartment and observed him coming and going from the apartment regularly. (*Id.*). No one else was seen coming and going from the unit. (*Id.*). Finally, officers conducted surveillance on the defendant outside his apartment and saw him engaging in a suspected drug transaction. (*Id.*). Accordingly, officers obtained two warrants to search the defendant's apartment: (1) a "sneak and peek" warrant which revealed drugs and was immediately followed up with (2) a formal warrant to search the apartment and seize evidence. (Def.'s Ex. 1-2).

A search of the defendant's apartment revealed a wealth of evidence of drug trafficking, including the pill press, over 200 grams of lab-confirmed fentanyl powder, "M30" stamps used to mimic the appearance of commercially manufactured oxycodone pills, counterfeit oxycodone pills containing fentanyl, digital scales, two firearms (including one with a high-capacity magazine), another loaded "drum" high-capacity magazine, and over $25,000 in cash. Officers also found a fraudulent MN ID in the name of James Watkins (the same ID used to purchase the pill press).

## ARGUMENT

The defendant argues that law enforcement "could have acted to stop the sale, delivery, or post-delivery transportation of the pill press" but elected not to stop the sale in order to obtain probable cause to search his apartment. (ECF 52 pp. 1-2). The defendant argues that this constituted "entrapment" or "outrageous government conduct" requiring the dismissal of the indictment or suppression of the evidence. This argument is patently frivolous, and the defendant's motion should be summarily denied.

A. **Legal Standard**

An entrapment defense has two elements: "government inducement of the crime, and a defendant's lack of predisposition to commit the crime." *United States v. Tobar*, 985 F.3d 591, 592 (8th Cir. 2021). "Inducement exists when the government implanted the criminal design in the defendant's mind." *Id.* (quoting *United States v. Young*, 613 F.3d 735, 747 (8th Cir. 2010)). The defendant bears the burden of proving inducement. *Id.* "The affirmative defense of entrapment is generally a question for the jury, not the

court, because it requires factual determinations relating to the effect of the Government's conduct on a defendant." *United States v. Bugh*, 701 F.3d 888, 893 (8th Cir. 2012).

"Outrageous Government conduct requires dismissal of a charge 'only if it falls within the narrow band of the most intolerable government conduct.'" *Bugh*, 701 F.3d at 894 (quoting *United States v. Morse*, 613 F.3d 787, 792-93 (8th Cir. 2010)). "[T]he level of outrageousness needed to prove a due process violation is quite high, and the government's conduct must shock the conscience of the court." *United States v. Williams*, 720 F.3d 674, 686 (8th Cir. 2013); *accord Bugh*, 701 F.3d at 894 (dismissal is appropriate only when "agents' conduct violates 'that fundamental fairness, shocking the universal sense of justice, mandated by the Due Process Clause of the Fifth Amendment.'"). A claim of outrageous government conduct is an affirmative defense, and thus the defendant "bears the burden of proving such conduct." *United States v. Andrews*, Crim. No. 18-149 (SRN/DTS), 2019 WL 5149929, at *7 (D. Minn. Aug. 9, 2019), *R&R adopted* 2019 WL 4165149 (D. Minn. Sept. 3, 2019).

### B. The Defendant Has Failed to Meet His Burden to Prove Either Entrapment or Outrageous Government Conduct.

The defendant has utterly failed to meet his burden of proving either entrapment or outrageous government conduct. The defendant does not contend that the government took any *affirmative* action to induce him or help him to commit a crime. Rather, the defendant's argument is premised on government *inaction*—specifically, the idea that the investigators could have and should have stopped the defendant from purchasing the pill press. In other words, the government did not implant the idea of purchasing a pill press

4

in his mind.  *See Tobar*, 985 F.3d at 592.  The defendant made the entirely independent and voluntary decision to purchase the pill press to further his illicit drug business.  As such, the defendant has failed to prove government inducement.

Even accepting the defendant's premise that entrapment could be based on a lack of government intervention his argument still fails.  The defendant has not demonstrated that the DEA had any statutory or other legal authority to prevent or stop the purchase of the pill press.  While the domestic purchase of a tableting machine is a regulated transaction that must be *reported* to the DEA, *see* 21 C.F.R. § 1310.05(b)(2), there is nothing in the regulatory scheme cited by the defendant requiring the DEA to approve such transactions or authorizing the agency cancel them at will, *see* 21 C.F.R. § 1310.01 *et seq*.  While the defendant correctly notes that the DEA had reason to be suspicious of the transaction given the use of a false ID, he has failed to show that they had any legal duty to do anything other than what they did here—refer the matter to their local investigators for follow-up.

The DEA's local investigators, of course, wield legal authority to investigate crimes, including to arrest suspects, seize evidence, and refer matters for prosecution.  The defendant seems to contend that officers should have arrested him immediately upon seeing him pick up the pill press.  This argument is also meritless.  The mere purchase of a pill press with fake documentation did not prove that the defendant intended to use the item for a criminal purpose.  Nor did it establish the scope of the defendant's criminal enterprise or his co-conspirators or accomplices (if any).  Accordingly, the DEA engaged in an investigation that was reasonably necessary to establish probable cause to search the defendant's apartment and/or arrest and prosecute the defendant, including installing a pole

camera, conducting K9 sniffs of the apartment, getting a tracker on the defendant's vehicle, and conducting surveillance. Even if the defendant were correct that officers could have arrested him when he picked up the pill press, the Eighth Circuit has explicitly held that "the Government ha[s] no obligation to arrest [a defendant] as soon as it ha[s] sufficient evidence to charge him." *United States v. Horton*, 756 F.3d 569, 574 (8th Cir. 2014).

Most importantly, the defendant's argument fails because it misunderstands the nature of the charge against him. Even if the government somehow "entrapped" the defendant into possessing the pill press, that is irrelevant. The defendant is not charged with possessing a pill press. As noted above, such possession is not illegal. Rather, the defendant is charged with possessing *fentanyl* and guns. The defendant has not and cannot establish that the government somehow induced him into possessing, or helped him possess, an illegal drug. Rather, the whole point of the investigation was to determine if the defendant was in fact possessing such drugs. He was arrested and charged immediately upon the discovery of his possession.

## **CONCLUSION**

Because the defendant has not met his burden of proving either entrapment or outrageous government conduct—and has not noticed any additional witnesses or evidence for the motions hearing—the court should summarily deny the defendant's motion, without further briefing or argument from the parties.

Dated:   March 3, 2023                                      Respectfully Submitted,

ANDREW M. LUGER
United States Attorney

*s/ Nathan H. Nelson*

BY: NATHAN H. NELSON
Assistant United States Attorney
Attorney ID No. 388713